IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank National Association, solely in its Capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2006, | Case No. 11-2542 (PAM/TNL) |
| Plaintiff, | **DEFENDANT WMC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| WMC Mortgage Corporation and EquiFirst Corporation, | |
| Defendants. | |

## INTRODUCTION

In its Opposition, Plaintiff contends that WMC "ignore[s]" the "express language of the Agreements" underlying its "straightforward breach of contract claims." (Opp. 2.)  To the contrary, WMC's motion rests on the express requirements of the loan-by-loan repurchase process the parties agreed is the "sole remed[y]" available to address loans that do not satisfy WMC's representations and warranties.  (WMC Br. 9, 19-20.) The governing Purchase Agreement provides that a claim to enforce this exclusive repurchase remedy must establish that a breach of WMC's individual loan representations and warranties "materially and adversely affects the value of a Mortgage Loan" ***and*** that WMC has been provided with "prompt written notice" and an opportunity to cure.  (Dkt. No. 28-1 §§ 3.02, 3.03; WMC Br. 7-8, 13-14, 16-17.)  It is Plaintiff—not

WMC—who abandons this contractually-mandated, loan-by-loan process and seeks to be relieved of its obligation to plead plausible compliance with the contractual requirements.

*At most*, Plaintiff attempts to plead facts demonstrating its plausible compliance with the Purchase Agreement's repurchase provisions for only two WMC loans.  (Compl. ¶¶ 24-25.)  In fact, Plaintiff admits only a 200 loan "sample" of the 3067 loans originally owned by the Trust has been reviewed.  Nevertheless, Plaintiff seeks to subject WMC to discovery concerning conclusory claims for repurchase or damages arising from some unidentified portion of "the rest" of the 3067 loans.  Plaintiff does not dispute that its Complaint fails to identify the loans for which it seeks relief, or to allege its ostensible compliance with the mandated loan-by-loan repurchase procedures for the vast majority of the unidentified loans purportedly at issue here.  Instead, ignoring the controlling WMC contracts, and lumping WMC and EquiFirst together (despite the fact that they are unrelated entities who entered into separate agreements with different language), Plaintiff offers in its Opposition several unavailing excuses as to why it need not do so.

As it relates to Plaintiff's claim for specific performance of the repurchase remedy (Count I):

- *Notice is a Condition Precedent.*  Plaintiff argues that it need not plead facts plausibly demonstrating that it notified WMC of any alleged breaches because, it asserts, notice is not a condition precedent to the contract's repurchase remedy.  In fact, the plain language of both the governing Purchase Agreement (which Plaintiff erroneously contends is not even applicable) and the Pooling Agreement require Plaintiff to allege that it provided WMC with notice and an opportunity to cure each loan it seeks to have WMC repurchase—which Plaintiff indisputably has not done.

- *"Sampling" Allegations are Insufficient.*  Plaintiff argues alternatively that, because it alleges it provided notice and an opportunity to cure as to loans it

"sampled," it has satisfied its pleading obligations as to all of the un-sampled WMC loans in the Trust.  WMC's Purchase Agreement, however, established a loan-by-loan procedure that cannot be avoided on "sampling" grounds.  Moreover, even assuming "sampling" could be sufficient at the pleading stage (which it cannot), Plaintiff's sampling argument fails because Plaintiff has not alleged any facts concerning the sampling methodology that was used.

- *The Contractual Repurchase Process is Not "Futile."*  Acknowledging that it has not satisfied the contract's notice requirements for the majority of loans at issue, Plaintiff argues that its failure to do so should be excused on futility grounds.  That excuse fails because Plaintiff has not alleged that WMC has entirely abandoned its contractual obligations.  Nor could Plaintiff do so as it alleges merely that WMC disputed the merits of Plaintiff's claims, which does not render satisfaction of the contractual repurchase process "futile."

- *Conclusory Allegations of "Material and Adverse Affect" are Insufficient.*  Plaintiff argues that conclusory allegations of compliance with conditions precedent are sufficient to satisfy Rule 8's pleading standards.  To survive a motion to dismiss post-*Twombly*, however, a plaintiff must plead facts sufficient to make a plausible showing of a right to relief.  Plaintiff has not done so— Plaintiff does not know, and thus has not alleged, whether there is a breach as to any of the un-sampled loans or, if so, whether the alleged breach materially and adversely affected the value of the loan; WMC does not know which of its loans are at issue.  Thus, the Complaint cannot satisfy Rule 8's pleading standards.

Plaintiff's claims for declaratory relief (Count II) and damages (Count III) also should be dismissed as improper attempts to avoid the contractual repurchase process. As to Count II, Plaintiff does not dispute either that it seeks the exact same relief through both its breach of contract and declaratory judgment claims, or that it seeks a declaration *now* that WMC has breached the contract with respect to any loans Plaintiff may identify in the *future*.  (*Compare* WMC Br. 17-19 *with* Opp. 22-24.)  With respect to Count III, Plaintiff's attempt to defend its damages claim ignores the language in WMC's Purchase Agreement, stating that repurchase is the "sole remed[y]" for alleged breaches of the loan

representations and warranties, and ignores that it has not asserted any plausible facts showing which (if any) of the loans is not subject to this "sole remed[y]" and why. These fatal defects require dismissal of these Counts.

Plaintiff filed suit without adequately investigating its claims, such that Plaintiff is unable to allege facts sufficient to establish a plausible contractual basis for WMC's repurchase of each allegedly defective loan. Plaintiff's claim that WMC cites "nothing" supporting the requirement of such an investigation simply exposes the core deficiency of its Complaint: Plaintiff has ignored the express requirements of the contractual, loan-by-loan remedy it attempts to invoke. Accordingly, the Complaint against WMC should be dismissed.

## ARGUMENT

### I.  PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF UNDER THE REPURCHASE PROCESS REQUIRED BY THE GOVERNING CONTRACTS.

In its opening brief, WMC demonstrated that Plaintiff's Complaint fails to state a plausible claim against WMC because, among other things, it is impossible to divine from the Complaint which loans allegedly are at issue, and why each such loan is purportedly subject to repurchase under the contractual provisions Plaintiff attempts to invoke. (WMC Br. 10-11.) These pleading shortcomings are particularly egregious here because WMC's contracts require a loan-by-loan assessment.

Plaintiff acknowledges that its claims rest upon representations and warranties "*about the Mortgage Loans* and the accuracy of the information that the Originators provided *with respect to those Loans*." (Compl. ¶¶ 19, 22, 27 (emphasis added).)

4

Indeed, the relevant section of the Purchase Agreement that contains those representations is titled "Representations and Warranties as to *Individual* Mortgage Loans." (Dkt. No. 28-1 § 3.02 (emphasis added).)  That section makes clear that the representations and warranties are applied on a loan-by-loan level. (*Id.* ("[T]he Company hereby represents and warrants to the Purchaser, as to *each* Mortgage Loan . . . ." (emphasis added).)

The Purchase Agreement limits claims arising from breaches of those representations to a loan-by-loan repurchase process.  Upon discovery of a breach of "a representation and warranty *relating to a particular mortgage loan*" which "materially and adversely affects the value of *a Loan*," the discovering party must give prompt written notice. (*Id.* § 3.03 (emphasis added).)  If the breach cannot be cured within the cure period, WMC shall "repurchase *such Mortgage Loan* at the Repurchase Price." (*Id.* (emphasis added).)  The calculation of the Repurchase Price requires analysis of each, individual loan to be repurchased. (*Id.* § 1.01 "Repurchase Price" ("With respect to *any Mortgage Loan*, a price equal to (i) the product of the percentage of par stated in the related Confirmation and the Stated Principal Balance of *the Mortgage Loan* . . .) (emphasis added).)

Because the Complaint lacks any specificity regarding which loans are at issue in the Complaint, WMC has no way of knowing which (or how many) loans in the Trust Plaintiff alleges are "non-conforming," whether WMC originated them, why they are allegedly non-conforming, whether WMC received the appropriate notice, or whether that alleged non-conformity materially and adversely affects the value of the loan.  In

fact, Plaintiff concedes that WMC cannot identify the "rest" of the loans Plaintiff is asking the Court to order WMC to repurchase, acknowledging that even within Plaintiff's own "sample" a material portion of the loans Recovco reviewed were not defective. (*See* Compl. ¶ 20.)

The Supreme Court made clear in *Twombly* and *Iqbal* that, to survive a motion to dismiss in federal court, a plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, there must be sufficient "[f]actual allegations" to make a plausible "showing, rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Plaintiff's Complaint does not meet these standards and should be dismissed. Plaintiff has failed to plead a plausible claim that WMC has breached the loan-related representations and warranties upon which Plaintiff's Complaint rests, or that Plaintiff is entitled to invoke the contractually-mandated individual loan repurchase process which was crafted and agreed upon by highly sophisticated parties.

## II.   PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE THAT IT SATISFIED EXPRESS CONDITIONS PRECEDENT TO THE REPURCHASE PROCESS.

WMC demonstrated in its opening brief that the loan-by-loan repurchase process described in the Purchase Agreement establishes several conditions precedent which must be satisfied before a claim may be asserted against WMC. (WMC Br. 15-17.) A claim against WMC exists only if within the statutory period: (1) WMC discovers or is notified of a breach that materially and adversely affects the value of the loan; (2) WMC fails to cure the breach; and (3) Plaintiff provides WMC with a written demand for compliance

with the contract.  (*Id.* 8.)  Plaintiff makes a variety of arguments in response, none of which excuses Plaintiff's failure to plead that these conditions have been satisfied for each loan purportedly at issue.

### A.    The Purchase Agreement Governs Plaintiff's Claims.

Plaintiff first argues that WMC's repurchase obligations are governed by the Pooling Agreement, a contract to which WMC is not a party.  (Opp. 4-6.)  Plaintiff cites no authority for the novel proposition that WMC's bargained-for conditions precedent and limitation of remedies expressly set forth in the WMC Purchase Agreement could be displaced by potentially conflicting terms in another agreement to which WMC is not a party.  Indeed, the case law is to the contrary.  *CDR Creances S.A. v. Euro-American Lodging Corp.*, 837 N.Y.S.2d 609, 610-11 (N.Y. App. Div. 2007) (dismissing "claim against defendants who were not parties to the agreement"); *see also Rosenblatt v. Christie, Manson & Woods Ltd.*, 195 Fed. Appx. 11, 12 (2d Cir. 2006) ("Where, as here, a contract is unambiguous, it is enforced according to its terms, and the court will generally not look outside the four corners of the document.").

The plain language of the relevant contracts establishes that the parties did not intend for the Pooling Agreement to supersede the repurchase process set forth in WMC's Purchase Agreement.  As between WMC and Plaintiff, the language shows that the parties intended for the Purchase Agreement to control the rights and obligations with respect to the repurchase of any WMC loans, with Plaintiff stepping into the shoes of WMC's original counter-party, UBS.

The Purchase Agreement provides that, in the event UBS assigns its rights to another entity, that entity "shall succeed to all rights and obligations of [UBS] under this [Purchase] Agreement." (Dkt. No. 28-1 § 9.12.) In the Assignment Agreement, WMC acknowledged that the Trust had been created under the Pooling Agreement (to which WMC is not a party), and that the Trust had succeeded through assignment to UBS' rights and remedies "under the Purchase Agreement" with respect to the Trust's mortgage loans. (Dkt. No. 1-1 at 317-18.)

The Pooling Agreement confirms that repurchase claims against WMC are governed by the Purchase Agreement. Under the Pooling Agreement (which governs the Trust's obligations to the Certificateholders), the Trust is only authorized to "enforce the obligations of [WMC] . . . *under the related Master Agreement* [a defined term for the Purchase Agreement] *or Assignment Agreement*." (Dkt. No. 1-1 §§ 2.03, 1.01 "Originator Master Agreement" (emphasis added).)

Notwithstanding this consistent, unambiguous contract language, Plaintiff argues that the Pooling Agreement supersedes the Purchase Agreement, and supplants that contract's agreed-to repurchase process, because the Assignment Agreement provides that WMC will "look solely to the Trust for performance of any obligations of [UBS] insofar as they relate to the enforcement of the representations, warranties and covenants with respect to the Mortgage Loans . . . ." (Opp. 5.) But the portion of this quotation Plaintiff omits makes clear that this provision means that WMC will "look solely to the Trust," and not UBS or the intermediate assignee, as its counter-party with respect to the repurchase remedy under the terms of the Purchase Agreement. It does not mean, as

Plaintiff argues, that the Pooling Agreement modified the terms of the Purchase Agreement.  The full quotation provides:

> [WMC] hereby acknowledges and agrees that from and after the date hereof (i) the Trust will be the owner of the Mortgage Loans, (ii) [WMC] shall look solely to the Trust for performance of any obligations of [UBS] insofar as they relate to the enforcement of the representations, warranties and covenants with respect to the Mortgage Loans, (iii) the Trust . . . shall have all the rights and remedies available to the [UBS], insofar as they related to the Mortgage Loans, **_under the Purchase Agreement_**, including, without limitation, the **_enforcement of_** the document delivery requirements and **_remedies with respect to breaches of representations and warranties set forth in the Purchase Agreement_**, and shall be entitled to enforce all of the obligations of [WMC] thereunder insofar as they relate to the Mortgage Loans, and (iv) all references to the Purchaser . . . **_under the Purchase Agreement_** insofar as they relate to the Mortgage Loans shall be deemed to refer to the Trust . . . .

(Dkt. No. 1-1 at 317 (emphasis added).)

In sum, none of the agreements say either that Plaintiff, as UBS' assignee, will receive any rights different from those expressly set forth in the WMC Purchase Agreement, or that the Purchase Agreement has been or will be modified in any respect by any assignment.  Thus, there is no basis for Plaintiff's argument that the Pooling Agreement trumps the Purchase Agreement and excuses its failure to allege compliance with the conditions precedent to exercising its rights and remedies against WMC under the Purchase Agreement.[1]

_____

[1] Plaintiff's own actions also contradict the position it takes in its Opposition.  The September 30, 2010 letter Plaintiff sent to WMC, which it attaches to its brief, invokes the Purchase Agreement by referencing the 60-day correction period set forth in the Purchase Agreement, rather than the 90-day correction period set forth in the Pooling Agreement.  (*Compare* Dkt. No. 31-1 *with* Compl. ¶ 18.)

### B.     The Requirements in Section 3.03 of the WMC Purchase Agreement Are Express Conditions Precedent.

Plaintiff argues next that even if the Purchase Agreement were to apply, "there is simply no language in the Agreements" indicative of a condition precedent.  (Opp. 9.) Plaintiff makes this argument, however, without acknowledging specific language in the WMC Purchase Agreement confirming the parties' intent to create conditions precedent (discussed at length in WMC's opening brief).  (WMC Br. 7-9.)  When that language is examined, Plaintiff's own cases demonstrate the existence of a condition precedent here.

A condition precedent will be found if there is "clear language showing that the parties intended to make it a condition."  *Mullany v. Munchkin Enters., Ltd.*, 69 A.D.3d 1271, 1274 (N.Y. App. Div. 2010).  Use of terms such as "if," "unless," and "until" indicate the presence of a condition precedent.  *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009).

The WMC Purchase Agreement provides:

> Within 60 days of the earlier of either discovery by or notice to the Company of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, the Company shall use its commercially reasonable efforts to promptly cure such breach in all material respects and, if such breach cannot be cured, the Company shall, at Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price.

> \* \* \*

> Any cause of action against the Company relating to or arising out of the breach of any representations and warranties made in Sections 3.01 or 3.02 ***shall*** accrue as to any Mortgage Loan ***upon*** (i) discovery of such breach by the Purchaser or notice thereof by the Company to the Purchaser, (ii) failure by the Company to cure such breach or repurchase such Mortgage Loan as

specified above, and (iii) demand upon the Company by the Purchaser for compliance with the relevant provisions of this Agreement.

(Dkt. No. 28-1 § 3.03 (emphasis added).)   The Pooling Agreement recognizes these limitations upon the Purchase Agreement's repurchase remedy, authorizing the Trust to take action against WMC under the Purchase or Assignment Agreements only **"if"** the Trust provides WMC with prompt notice of the breach "in respect of any Mortgage Loan that materially adversely affects the value of such Mortgage Loan" and WMC fails to cure the alleged breach.  (Dkt. No. 1-1 § 2.03.)

The use of unambiguous words "shall . . . upon" and "if" in these agreements makes clear that providing WMC with notice and an opportunity to cure within the statutory period for each individual loan is an express condition precedent to both WMC's obligation to repurchase loans and Plaintiff's right to commence litigation against WMC.  Indeed, one of the cases Plaintiff cites confirms that these provisions are, in fact, conditions precedent.  *Morgan Guar. Trust Co. v. Bay View Franchise Mort. Acceptance Co.*, No. 00 Civ. 8613 (SHS), 2002 U.S. Dist. LEXIS 7572, at *16 (S.D.N.Y. Apr. 30, 2002) (holding that nearly identical prompt notice provision is a condition precedent); s*ee also LaSalle Bank Nat'l Ass'n v. CAPCO Am. Securitization Corp.*, No. 02 CV. 9916 (RLC), 2005 U.S. Dist. LEXIS 27781, at *7 (S.D.N.Y. Nov. 10, 2005) (holding that, where contract required trustee to provide prompt notice of repurchase claims, such notice was "an implied element of the [trustee's] cause of action").

The cases upon which Plaintiff relies to assert that the notice provision in the Purchase Agreement is not a condition precedent—*Trust for the Certificate Holders of*

the *Merrill Lynch Mortg. Pass-Through Certificates Series 1999-C1 v. Love Funding Corp.*, No. 04 Civ. 9890 (SAS), 2005 U.S. Dist. LEXIS 23522, at *32 (S.D.N.Y. Oct. 7, 2005) and *LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, No. 02 Civ. 7868 (HB), 2003 U.S. Dist. LEXIS 12043, at *14-15 (S.D.N.Y. June 16, 2003) (Opp. 9 n.5)—are not controlling.  WMC's Purchase Agreement does include a notice provision that, in part, is like those considered in *Love Funding* and *LaSalle*.  It provides that WMC's repurchase obligation can be triggered by either notice of a defect provided by the purchaser *or* discovery of the defect by WMC.  But those courts did not consider either the additional "shall . . . upon" prerequisites to a claim to enforce that obligation set forth in WMC's Purchase Agreement or the "if" language in WMC's Pooling Agreement, which establish that notice is a condition precedent.

But, even if the Court were to consider only the "discovery or notice" clauses of Section 3.03 of the Purchase Agreement, Plaintiff's pleading is still inadequate because it not only fails to allege that it provided notice of the defect to WMC, it also does not assert that WMC had discovered any of the alleged defects.  In fact, Plaintiff asserts that, when it brought certain purported non-conforming loans to WMC's attention, WMC reviewed the loans and disagreed with Plaintiff's conclusions.  (Compl. ¶ 32.)[2]

In sum, under either the Purchase or Pooling Agreements, Plaintiff's allegations are insufficient to satisfy Plaintiff's obligation to plead facts establishing that Plaintiff

---

[2] Assured *Guaranty Municipal Corp. v. Flagstar Bank*. No. 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 8, 2011) (Opp. 13 n.7), does not excuse Plaintiff's pleading failure for these same reasons.

plausibly complied with the contractual pre-conditions to filing suit, requiring dismissal of its claims against WMC.

> **C.    Plaintiff's Purported Sampling Does Not State a Claim as to the Un-Sampled Loans Not Addressed in the Complaint.**

Unable to dispute that it never gave WMC notice and an opportunity to cure with respect to any of the unidentified, un-sampled loans for which it seeks relief, Plaintiff attempts to excuse this omission by arguing that its allegations concerning a "sample" of 200 loans is sufficient to plead its claims as to all loans in the Trust.  (Opp. 10-14, 16.) This argument fails for at least two reasons.

First, given the loan-by-loan requirements of the Purchase Agreement discussed above, a sample of loans cannot provide a legally plausible basis to assert repurchase claims regarding the un-sampled loans.  Plaintiff's pleading here is deficient because Plaintiff does not allege that it provided WMC with the contractually required notice and opportunity to cure—based upon a sample or otherwise—with respect to *any* of the un-sampled loans.

Plaintiff contends that *Morgan Guaranty Trust Co. v. Bay View Franchise Mortgage Acceptance Co.*, No. 00 Civ. 8613 (SHS), 2002 U.S. Dist. LEXIS 7572 (S.D.N.Y. Apr. 30, 2002), supports its argument because the plaintiff there "gave defendant notice of a sample of non-conforming loans."  (Opp. 11.)  But *Morgan* is not a sampling case.  The word "sample" never appears in the opinion.  In fact, the court held that the prompt notice provision was a condition precedent to repurchase claims under

New York law, *id.* at *15, and expressly noted that the plaintiff had provided notice for *all* 63 loans at issue there. *Id.* at *2, 7.

Second, the Complaint also fails because it is devoid of any allegations explaining the so-called sampling methodology that was employed. The allegations as to who selected the sample are conflicting, and there are no allegations as to how the sample was selected, of only 200 of the 3067 loans, or why this small sample allegedly was sufficient to extrapolate to the rest of the loan pool, or how many of the loans in the sample were originated by WMC (as opposed to EquiFirst or another originator).[3] Thus, there is nothing that plausibly shows that the alleged results as to the few sampled loans have any correlation to the much larger pool of un-sampled loans, particularly where the so-called sampling showed that 25% of the loans were not defective.

Plaintiff contends that two cases decided by the same New York trial court, *Ambac Assurance Corp. v. DLJ Mortg. Capital, Inc.*, No. 600070/2010, 2011 N.Y. Misc. LEXIS 1462 (N.Y. Cnty. Sup. Ct. 2011) and *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 927 N.Y.S.2d 517, 529 (N.Y. City Sup. Ct. 2011), provide that allegations of a loan sample "give sufficient notice" "at this juncture" with respect to claims against loans that were not sampled.  (Opp. 11-12.)  These cases do not support Plaintiff's arguments. *Ambac* and *MBIA* involved both fraud and breach of contract claims brought by an insurer; the contract claims were brought under both a loan purchase agreement and a

---

[3] The Complaint asserts in paragraph 3 that the sample was "selected by Plaintiff" but, in paragraph 20, Plaintiff alleges that Plaintiff "request[ed] that Wells Fargo, as the Trust Administrator, obtain a sample of the loan files for those Loans" and that "200 sample files" were reviewed.  (Compl. ¶¶ 3, 20.)  The Complaint is otherwise devoid of *any* allegations about the alleged "sampling" of the loans.

broader insurance contract.  In ruling that the breach of contract claims could proceed, the court relied upon a New York statute and New York pleading standards providing that a party pleading breach of contract need only give "notice of the transactions or occurrences underlying the claim."  *MBIA*, 927 N.Y.S.2d at 534.  This standard is different from the federal plausibility pleading standard set forth in *Twombly* and *Iqbal*.  In light of this more lenient standard, the *Ambac* and *MBIA* court did not analyze any contractual requirements similar to the loan-by-loan provisions in the Purchase Agreement.  This Court should consider those requirements, and find that pleading sampling (if that is what Plaintiff has done) is no substitute for pleading facts establishing a plausible claim that Plaintiff complied with conditions precedent for filing suit as to thousands of unidentified loans.

*Ambac* and *MBIA* are further distinguishable because, in those cases, each plaintiff in its complaint detailed its methodology for selecting and analyzing a large loan sample.  In *Ambac*, the plaintiff alleged that it had sampled hundreds of loans with certain identified characteristics plus several hundred more randomly selected loans.  2011 N.Y. Misc. LEXIS 1462 at *7.  In total, the plaintiff sampled 1,164 of the 2,563 loans at issue.  *Id.* at *1, 7.  Similarly, in MBIA, the plaintiff sampled 1863 loans.  *MBIA Ins. Corp.*, 927 N.Y.S.2d at 529.  Although Plaintiff claims that its 200-loan sample was "random" in its Opposition (*see* Opp. 13), there is no such allegation in the Complaint.  In fact, as noted above, there is no description whatsoever regarding the methodology used to select the 200 loans or their characteristics (*i.e.,* the loan originator, whether the loans had defaulted or were performing, etc.).  This is critical because a cherry-picked, non-representative

sample is not sufficient to state a claim as to un-sampled loans. *See Holowecki v. Fed. Express Corp.*, 644 F. Supp. 2d 338, 356 (S.D.N.Y. 2009) (dismissing claim because plaintiff attempted to prove her claim with a narrow, cherry-picked, and unrepresentative sample). With no explanation as to how the undersized sample was collected, Plaintiff's 200 loan "sample" provides an insufficient basis to extrapolate a *plausible* claim with respect to *all* 3,067 loans in the Trust.[4]

### D. Plaintiff Has Not Alleged Futility as It Has Not Alleged That WMC Disavowed the Contract.

Plaintiff also argues that it is excused from complying with the notice provision in the WMC Purchase Agreement because it would have been "futile" to do so. (Opp. 14.) As an initial matter, Plaintiff has improperly raised the futility argument for the first time in its Opposition. The Complaint contains *no* such allegations. A plaintiff cannot amend its complaint through its response to a motion to dismiss. *Holly*, 2008 U.S. Dist. LEXIS 84154, at *8 n.2 (declining to consider new facts argued for the first time in response to motion to dismiss); *see also Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913-14 (8th Cir. 2002) (complaint can be amended only on formal motion, not through request in response brief).

---

[4] Plaintiff attempts to backfill its obligation to plead notice by attaching to its Opposition the September 30, 2010 letter, which is neither expressly referenced in nor attached to its pleading. (Opp. 10-14.) Even if the Complaint could be amended by an exhibit to a subsequent brief (and the case law is to the contrary, *see e.g.*, *Holly*, 2008 U.S. Dist. LEXIS 84154, at *8 n.2), the letter confirms that Plaintiff provided notice only for the subset loans listed in Schedule I of the letter. (Dkt. No. 31-1 at p. 1.) How those loans relate to the loans at issue in the Complaint is unclear— one cannot tell from the Complaint whether the loans identified in the letter are among the loans Recovco reviewed, or if so, whether any of them are among the 50 loans Recovco determined were conforming.

Further, Plaintiff has not plausibly alleged futility as it relates to WMC.  Under applicable New York law, compliance with a condition precedent can only be declared "futile" where the opposing party completely repudiates the contract.  *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992) (failure to provide notice and an opportunity to cure may only be excused where "the repudiating party expressly disavowed any further duties under the contract at issue, in effect declaring the contract at an end"); *Point Prods. A.G. v. Sony Music Entm't, Inc*., No. 93 Civ. 4001 (NRB), 2000 U.S. Dist. LEXIS 10066, at *14-15 (S.D.N.Y. July 20, 2000) (notice was not futile where defendant could not point to any allegations that plaintiff "deliberately abandoned or repudiated the Agreement").  Thus, "the [futility] exception to the general rule favoring enforcement of notice and cure provisions is a narrow one."  *Point Prods. A.G.*, 2000 U.S. Dist. LEXIS 10066 at *14.

Here, Plaintiff has not alleged that WMC abandoned the contract.  In fact, Plaintiff's allegations confirm that WMC has ***not*** done so.[5]  For example, the Complaint admits that "WMC has responded" to Plaintiff's few repurchase requests to date. (Compl. ¶ 32.)  WMC provided detailed explanations as to why it disagrees with Plaintiff as to the merits of those particular loan repurchase requests.  (*Id.*)  The fact that WMC has not repurchased the loans as a result of those disagreements is not sufficient to allege that it would be futile for Plaintiff to provide WMC with notice and an opportunity to cure as to any of the other loans in the Trust.  *See Jin Zhou v. Guardian Life Ins. Co. of*

---

[5]As discussed above, WMC contends that the express conditions precedent set forth in the Purchase Agreement are valid, binding and should be enforced.

*Am.*, 295 F.3d 677, 680 (7th Cir. 2002) ("[F]or a party to come within the futility exception, he must show that it is certain that his claim will be denied . . . not merely that he doubts that an appeal will result in a different decision.") (internal quotation marks omitted).

### E. Plaintiff's Conclusory Allegations of "Material and Adverse Affect" Do Not Satisfy *Twombly* and *Iqbal.*

Plaintiff does not dispute that a breach of WMC's representations and warranties concerning a mortgage loan is only actionable under the Purchase Agreement if that breach "materially and adversely affects" the value of the loan. But Plaintiff contends that its conclusory allegations that unidentified breaches are materially and adversely affecting unidentified loans are sufficient to satisfy Rule 8's pleading standards with respect to this necessary element of its claims. (Opp. 15.) Plaintiff's argument is without basis because it disregards the loan-by-loan language of the Purchase Agreement, and relies upon inapplicable cases.

For example, Plaintiff cites to a pre-*Twombly*, 2004 California district court case, which merely holds that a complaint must inform each co-defendant of the nature of its wrongful conduct (Opp. 17), and a pair of cases decided under New York's more lenient state court pleading standards (discussed above), *DLJ Mort. Capital, Inc. v. Fairmont Funding, Ltd*., No. 0600714/2007, 2008 N.Y. Misc. LEXIS 7713 (N.Y. Cnty. Sup. Ct. Jan. 28, 2008) and *Ambac* (Opp. 16, 19), which lack precedential value in this federal proceeding.

18

Plaintiff further argues that "materiality" is a fact-specific issue that should not be resolved on a motion to dismiss.  (Opp. 19.)  WMC is not, however, asking the Court to adjudicate materiality at the pleading stage.  Nor could it given the lack of any allegations in the Complaint as to how the purported breaches materially and adversely affect the individual loan values.  Indeed, that is the whole point of WMC's argument: the Purchase Agreement requires that a breach have a material and adverse affect on a loan's value before Plaintiff has a repurchase claim to assert.  (*See* Dkt. No. 28-1 § 3.03.)  Thus, Plaintiff must plausibly allege in its Complaint how the breaches purportedly affected the value of the loans in suit, and it has not done so.

Plaintiff also argues that WMC is precluded from disputing Plaintiff's claims based on "events that took place after [WMC] originated the Loans" because the Complaint alleges that WMC breached its representations "as of the origination date." (Opp. 18.)  In support of this premature – and baseless – argument, Plaintiff cites only *Wells Fargo Bank, N.A. v. LaSalle Bank National Association*, No. CIV-08-1125-C, 2011 U.S. Dist. LEXIS 35343 (W.D. Okla. Apr. 1, 2011), a trial court's ruling on a motion *in limine* in a case in which the plaintiff had expressly limited the damages it was seeking to those incurred as of the securitization closing date.  *Id.* at *23-24.  Plaintiff ignores other cases, such as *Wells Fargo Bank, N.A. v. LaSalle Bank, N.A.*, No. 2:08-cv-1448, 2011 U.S. Dist. LEXIS 119394, at *10-11 (D. Nev. Feb. 23, 2011), which correctly hold that post-sale housing market conditions are relevant because, if an intervening "decline in the housing and real estate markets . . . caused material adverse effects, not a breach of any representation," a repurchase plaintiff would not be entitled to relief.  *See also LaSalle*

*Bank, N.A. v. Citicorp Real Estate, Inc.*, No. 01 CIV 4389 (AGS), 2002 U.S. Dist. LEXIS 1730, at *8 (S.D.N.Y. Feb. 5, 2002) (repurchase claim requires a showing of "a material and adverse effect caused by the breach"); *LaSalle Bank N.A. v. CIBC Inc.*, No. 08 Civ 84269, 2011 U.S. Dist. LEXIS 119373, at *9 (S.D.N.Y. Oct. 17, 2011) (alleged underwriting deficiencies must have caused a "material and adverse affect").[6]

As a fall-back, Plaintiff argues that its conclusory allegation that it "has performed all conditions, covenants, and promises required on its part" is enough to survive dismissal under Rule 9(c).  (Compl. ¶¶ 41, 48, 54.)  In addition to ignoring *Twombly* and *Iqbal*, Plaintiff's argument disregards the well-established rule that, if the factual allegations in the Complaint show that a condition has not been met, then general allegations of compliance will not suffice.  *Romine v. Acxiom Corp.*, 296 F.3d 701, 706 (8th Cir. 2002) ("While notice pleading does not demand that a complaint expound the facts, a plaintiff who does so is bound by such exposition.").  That is the situation here, where Plaintiff pleads generally that it complied with all conditions precedent, but then concedes in its Complaint that it has not provided notice for all of the loans in the Trust, as the contracts plainly require.  (*See* WMC Br. 7-9; Compl. ¶¶ 20-22.)

The Complaint does not satisfy Rule 8's pleading requirements and, as a consequence, should be dismissed.

---

[6] In two recent cases before the same New York trial court, plaintiffs argued that post-contract events were irrelevant because Countrywide had breached its representations as of the contract date.  The court denied plaintiffs' motions, finding that the contracts were ambiguous.  *Syncora Guar. Inc. v Countrywide Home Loans, Inc.*, No. 650042/09, 2012 N.Y. Misc. LEXIS 1, *14 (N.Y. Sup. Ct. Jan. 3, 2012); *MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, No. 602825/08, 2012 N.Y. Misc. LEXIS 2, at *32 (N.Y. Sup. Ct. Jan. 3, 2012).

III.    **THE REQUEST FOR DECLARATORY RELIEF IN COUNT II SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE.**

WMC also has demonstrated that Count II should be dismissed because it is duplicative and premature.   (WMC Br. 17-19.)   In response, Plaintiff makes two arguments, both of which fail.

First, Plaintiff argues that declaratory relief is available where there is an actual controversy.   (Opp. 22-23.)   WMC agrees.   But, to the extent there is an actual controversy with respect to some loans, Plaintiff's request for declaratory relief is duplicative of the relief it seeks for its breach of contract claim.   Ignoring the many cases WMC cited in which declaratory judgment claims have been dismissed in identical circumstances (*see* WMC Br. 17-18), Plaintiff relies on this Court's decision in *Guidant Sales Corp. v. George*, No. 05-2890 (PAM/JSM), 2006 U.S. Dist. LEXIS 83008 (D. Minn. Nov. 14, 2006).   In *Guidant Sales Corp.,* however, the plaintiff merely sought a declaration that the contract at issue was "valid and enforceable."   *Id.* at *10.   Here, the parties agree that the Purchase Agreement is valid and enforceable.   Plaintiff seeks a declaration that WMC (1) breached the Agreement and (2) is obligated to repurchase all the WMC loans in the Trust.   (Compl. ¶ 49.)   That is duplicative of Plaintiff's breach of contract claim in Count I and is improper.

Second, Plaintiff argues that the declaratory judgment will serve a "useful purpose" because it will be a guide for "further relief."   (Opp. 23-24.)   This argument only highlights why the declaratory relief Plaintiff seeks is premature.   As WMC explained, Plaintiff is not entitled to obtain a ruling *now* that the contract has been

breached with respect to loans that it may identify in the *future*.   (WMC Br. 19.) Declaratory relief does not lie "where a party seeks relief arising out of a hypothetical future act." *Hensen & Assocs., LLC v. Am. Portfolios Fin. Serv.*, No. 10-CV-3590 (SRN/JSM), 2011 U.S. Dist. LEXIS 39293, at *11 (D. Minn. Apr. 11, 2011).   For the loans for which Plaintiff has not already provided written notice, any future dispute is purely hypothetical. Count II should be dismissed for this additional reason.

## IV.   COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFF'S SOLE REMEDY IS REPURCHASE.

WMC has shown that the claim for damages in Count III should be dismissed because Plaintiff has failed to plead that the "sole remed[y]" of specific performance is unavailable.   (WMC Br. 19-20.)   In response, Plaintiff focuses on language in the EquiFirst purchase agreement concerning Plaintiff's purported entitlement to "pursue all available remedies" upon an "Event of Default" for failure to repurchase.   (*See* Opp. 20.) This language is not found in the WMC Purchase Agreement.[7]   (*Id.*)   Moreover, even when such language follows language in an agreement that repurchase will be the "sole remedy" for breach of a loan seller's representations and warranties, the "sole remedy" language means that the loan purchaser is limited to the "cure or repurchase" remedy and cannot otherwise "seek[] reimbursement" in the form of damages.   *Assured Guar. Mun. Corp. v. Flagstar Bank*, No. 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722, at *18 (S.D.N.Y. Oct. 31, 2011) (dismissing plaintiff's claims "seeking reimbursement").   The

---

[7] The WMC Purchase Agreement does not even contain a section regarding Events of Default.   (*See* Dkt. No. 28-1.)

language in the WMC Purchase Agreement restricts Plaintiff to the sole remedy of repurchase, and that limitation should be enforced by the Court.  (Dkt. No. 28-1 § 3.03.)

WMC also challenged the sufficiency of Plaintiff's allegations regarding this damages claim.  (WMC Br. 20.)  Plaintiff argues in response that it has adequately alleged that some unidentified loans are not available for repurchase because the Complaint includes general allegations that some loans in the Trust have been liquidated, and it need not allege anything more.  (Opp. 21.)  Plaintiff thus concedes that it has not identified the loans for which it is seeking damages, or whether those loans satisfy the Purchase Agreement's requirements for repurchase if the loans had not been liquidated. Global allegations regarding the performance of the entire pool of loans are insufficient to state a plausible claim of damages for any specific loan.

## CONCLUSION

For all the foregoing reasons, the Court should grant WMC's Motion to Dismiss Plaintiff's Complaint.

Dated:  January 26, 2012              **GREENE ESPEL P.L.L.P.**

  s/ Jenny Gassman-Pines
Andrew M. Luger, Reg. No. 189261
Jenny Gassman-Pines, Reg. No. 386511
200 S. Sixth Street, Suite 1200
Minneapolis, MN  55402
aluger@greeneespel.com
jgassman-pines@greeneespel.com
(612) 373-0830

and

**JENNER & BLOCK L.L.P.**

Barbara S. Steiner, IL Reg. No. 2719665
(*pro hac vice*)
Matthew J. Thomas, IL Reg. No. 6244009
(*pro hac vice*)
353 N. Clark Street
Chicago, IL  60654
bsteiner @jenner.com
mthomas@jenner.com
(312) 222-9350

Attorneys for WMC Mortgage, LLC, as
successor to Defendant WMC Mortgage
Corporation