UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MASTR Asset Backed Securities
Trust 2006-HE3, by U.S. Bank
National Association, Trustee,

Civil No. 11-2542 (PAM/TNL)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

WMC Mortgage Corporation and
EquiFirst Corporation,

Defendants.

This matter is before the Court on Defendants' Motions to Dismiss. For the reasons that follow, the Motions to Dismiss are granted in part and denied in part.

**BACKGROUND**

This case involves a mortgage-backed securities trust. The Trustee is U.S. Bank National Association, and the "Master Servicer" of the Trust is Wells Fargo Bank, N.A. Defendants are two "mortgage originators" who sold mortgages to the Trust; the Trust then issued certificates backed by the Trust's assets. Defendant EquiFirst Corporation is a subsidiary of Barclay's; Defendant WMC Mortgage Corporation is a subsidiary of GE Capital. The public prospectus for the Trust indicated that nearly 58% of the loans in the Trust were originated by WMC, 25% were originated by two banks not a party to this lawsuit, and approximately 18% of the loans were originated by EquiFirst. According to Defendants, the contracts under which the Trust purchased loans from each Defendant are

very different, yet the Complaint conflates the two entities. In any event, the Trust contends that the mortgages Defendants sold the Trust violate the Defendants' representations and warranties about those mortgages, such as the representation and warranty that the loans complied with certain underwriting standards, among other things. The Trust wants Defendants to repurchase all mortgages Defendants sold the Trust or otherwise reimburse the Trust for the bad mortgages.

The Trust was formed in 2006, and at its inception had a loan balance of more than $555 million, from more than 3,000 mortgages. (Compl. ¶ 28.) By 2010, however, the rating on the most senior certificates had fallen from AAA to CCC. (Id. ¶ 29.) The certificateholders instituted an investigation in April 2010, asking Wells Fargo, as the Master Servicer, to obtain a sample of the loan files for the loans in the Trust. (Id. ¶ 20.) Wells Fargo provided the certificateholders with 200 loan files, from which the certificateholders allegedly "identified material breaches of the Originators' representations and/or warranties in 150 out of 200 Mortgage Loan files." (Id.)

On October 15, 2010, US Bank as Trustee sent EquiFirst a letter requesting that EquiFirst repurchase 51 loans. EquiFirst declined to do so. On September 30, 2010, US Bank sent a similar letter to WMC with respect to its loans, although in that letter US Bank merely gave notice to WMC regarding its share of the 150 bad mortgages identified out of the sample without identifying any specific loans. WMC likewise declined to repurchase the loans. This lawsuit ensued.

**DISCUSSION**

**A.     Standard of Review**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**B.     Relevant Contracts**

The first issue to be determined is what the operative contract is. There are three contracts at issue: purchase agreements, originally between each Defendant and UBS; an assignment agreement, in which each Defendant acknowledges both the creation of the Trust and the fact that US Bank is assigned all of UBS's rights under the purchase agreements; and the pooling and servicing agreements between the Trust, US Bank, Wells Fargo, and other entities (but not Defendants) setting forth the framework of the Trust. Defendants argue that the only contract they signed was a purchase agreement. US Bank contends that Defendants are bound to the terms of the pooling and servicing agreements, which have different terms that the purchase agreements. To further complicate matters, the purchase agreements that

EquiFirst and WMC signed are not the same.[1]

The relevant agreements for the purposes of this case are the purchase agreements between UBS and each Defendant. This is the only writing Defendants signed that sets forth the terms of the parties' agreement with respect to the mortgages at issue. The assignment agreements do not contain any new representations and warranties, for example, but merely state that the representations and warranties in the purchase agreements are true and correct. (Compl. ¶ 14; Assignment Agreement (Docket No. 1-1) at III.2.) Indeed, the terms of the assignment agreement indicate that the purchase agreements control the parties' contractual relationship, stating that US Bank is succeeding to all of UBS's rights and remedies "under the Purchase Agreement." (WMC's Assignment Agreement at 1 (Docket No. 1-1 at 317).) EquiFirst and WMC are not parties to the pooling and servicing agreement; even if they "acknowledged" the formation of the Trust pursuant to that agreement, that "acknowledgment" does not make them bound to the Trust documents. (Id.) Moreover, US Bank cannot have any more rights against Defendants than does the Trust, and the Trust's rights stem from the purchase agreements with Defendants, not from any documents the Trust entered into with other entities. The purchase agreements control here.

As noted, the purchase agreements EquiFirst and WMC signed are different in significant ways. First, the contract EquiFirst signed required the Trust to give notice of an alleged breach of representations and warranties no later than 60 days after the discovery of

---

[1] There is no dispute that New York law governs this dispute, pursuant to the choice-of-law provisions in every contract at issue, whether the purchase agreements or the pooling and servicing agreements.

the alleged breach. (EquiFirst's Purchase Agreement § 3.03 (Docket No. 26-1 at 43).) WMC's contract, by contrast, requires only "prompt notice." (WMC's Purchase Agreement § 3.03 (Docket No. 28-1 at 40).) According to EquiFirst, the Trust had notice of the alleged breaches by August 5, 2010, but did not send EquiFirst the notice of claim letter until October 15, 2010, more than 60 days later. The Trust notified WMC's of the alleged breaches in late September 2010. WMC does not contend that this notice was untimely under its contract's "prompt notice" requirement. For its part, US Bank argues that it did not have notice of the alleged breaches until August 27, 2010, making its notice to both EquiFirst and WMC timely.

Another difference between EquiFirst's and WMC's contracts is the time period for cure. Under EquiFirst's agreement, EquiFirst has 90 days in which to cure any alleged breach of its representations and warranties. (EquiFirst's Purchase Agreement § 3.03 (Docket No. 26-1 at 43).) WMC, by contrast, has 60 days to cure. (WMC's Purchase Agreement § 3.03 (Docket No. 28-1 at 40).) Both contracts, however, limit the remedy for a breach to "cure, substitute, or repurchase" of an allegedly defective mortgage. Again, US Bank conflates the two entities, claiming that they did not cure the alleged breach by December 17, 2010, which is more than 60 days but fewer than 90 days after notice was given. The Complaint states that Defendants had a 90-day cure period. (Compl. ¶ 21.) The Complaint goes on to state, however, that specific details about the allegedly defective loans was not provided to Defendants until May 20, 2011. (Id. ¶ 22.)

5

**C.     Timeliness of Notice**

There are two separate issues with respect to notice. First, was the notice timely under the terms of the contract, and second, whether the notice was sufficient because it did not identify specific loans nor did it discuss any loans but the 150 from the 200-loan sample.

1.     <u>What the contract required</u>

This section applies only to EquiFirst, because WMC's purchase agreement does not specify a particular time limit on notice. Under EquiFirst's agreement, US Bank had 60 days from when it knew of the breach to notify EquiFirst and give EquiFirst a chance to cure. US Bank argues that its notice to EquiFirst of the breach was timely because US Bank did not know of the alleged breaches until August 27, 2010, and gave notice to EquiFirst on October 15, 2010.

The purchase agreement between EquiFirst and US Bank (as "Purchaser") provides that

> upon discovery by the Company or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans . . . , the party discovering such breach shall give prompt (but in no event later than within sixty (60) days after the date on which a responsible officer of the discovering party with direct responsibility for the related transaction has actual knowledge of such breach) written notice to the other.

(EquiFirst's Purchase Agreement § 3.03 (Docket No. 26-1 at 43).) "Purchaser" "shall be deemed to refer to the Trust (including the Trustee and the Servicer acting on the Trust's behalf)." (Assignment Agreement at 1.) Under the terms of the purchase agreement, therefore, notice to Wells Fargo was notice to US Bank. There is no dispute that Wells Fargo

6

had notice of the alleged breaches on August 5, 2010. (See Compl. ¶ 21 ("On or about August 5, 2010, Recovco notified Wells Fargo of its findings [with respect to alleged breaches of representations and warranties].") Thus, the October 15, 2010, letter to EquiFirst was untimely under the terms of the parties' agreement, and US Bank's claims against EquiFirst for the loans ostensibly covered by this letter must be dismissed.

    2.    <u>Sufficiency of notice</u>

WMC argues that the notice to it was insufficient because it did not tell WMC which particular loans were alleged to be defective. The parties did not in their agreement specify what notice of alleged breaches would entail. The Court cannot infer from the "prompt notice" requirement that US Bank was required to investigate particular loans prior to giving notice. WMC's Motion on this point is denied.

**D.**    **Ripeness**

Both EquiFirst and WMC ask the Court to dismiss any claims US Bank has raised for loans not included in the original 200-loan sample, because US Bank has never given either Defendant notice of or the opportunity to cure its alleged breach with respect to the other loans. The Complaint contends that US Bank is "entitled to specific performance of WMC and EquiFirst's contractual obligation to repurchase the Defective Loans identified by the Trustee to date, as well as the rest of the non-conforming Mortgage Loans in the Trust." (Compl. ¶ 42.)

WMC's purchase agreement provides that WMC must either cure or repurchase defective loans within 60 days of being notified of the breach. (WMC's Purchase Agreement

7

§ 3.03 (Docket No. 28-1 at 40).) US Bank's cause of action against WMC arises only when it has demanded that WMC cure or repurchase and WMC has failed to do so within the 60-day time period. EquiFirst's purchase agreement is substantially similar, also giving EquiFirst 60 days to cure, repurchase, or substitute. (EquiFirst's Purchase Agreement § 3.03 (Docket No. 26-1 at 43).) If EquiFirst fails to cure, repurchase, or substitute, US Bank may enforce its rights.

There is no dispute that US Bank has never demanded that WMC or EquiFirst cure any defective loans other than the loans in the first sample. Thus, US Bank's claims arising out of other loans, for which it has yet to give WMC and EquiFirst notice and an opportunity to cure, are not yet ripe. Those claims must be dismissed.

**E.     Declaratory Judgment**

Defendants ask the Court to dismiss the declaratory judgment claim, contending that this claim is duplicative of the breach-of-contract claim. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985). Indeed, courts do not hesitate to dismiss declaratory judgment claims when those claims "allege[] . . . duties and obligations under the terms of the contract and asks the court to declare those terms breached . . . ." Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc., No. 4:06CV1308, 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007); see also Daum v. Planit Solutions, Inc., 619 F. Supp. 2d 652, 657 (D. Minn. 2009) (Kyle, J.) (dismissing

8

declaratory judgment claim as duplicative of breach-of-contract claim).

US Bank contends that its declaratory judgment claim is not duplicative because its breach of contract claim "will not settle all of the contractual issues concerning which [US Bank] seeks declaratory relief." StreamCast Networks, Inc. v. IBIS LLC, No.05CV4239, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006). But the Complaint belies this contention, asking for a declaration that "WMC and EquiFirst are obligated under the PSA, the Purchase Agreements and the Assignment Agreements to repurchase the Defective Loans identified by the Trustee to date, as well as the rest of the non-conforming Mortgage Loans in the Trust." (Compl. ¶ 49.) This is precisely what US Bank contends in its breach-of-contract claim, and thus the request for a declaratory judgment is duplicative and is dismissed.

**F.     Damages**

Finally, Defendants contend that the purchase agreements limit US Bank's remedies to either repurchase or, in EquiFirst's case, substitution.[2] The Complaint asks for damages "if specific performance is for any reason not available (for example, where a loan has been liquidated and is no longer available for repurchase)." (Compl. ¶ 55.) Having determined that US Bank's claims against EquiFirst either are not timely or are not ripe, the Court need only discuss the remedies issue with respect to WMC.

---

[2] Defendants also contend that US Bank's allegations fail to satisfy the heightened pleading requirements of Rule 9(b), but US Bank has not raised a fraud claim here. The use of the word "false" or "fraudulent" does not change the breach-of-contract claim into a fraud claim. Defendants' argument on this point is without merit.

WMC's purchase agreement states that "the obligations [of WMC] . . . to cure, substitute or repurchase a defective Mortgage Loan . . . constitute the sole remedies of [WMC] respecting a breach of the foregoing representations and warranties." (WMC's Purchase Agreement § 3.03 (Docket No. 28-1 at 42).)  Thus, under the clear terms of the parties' agreement, the sole remedy available to US Bank is to seek cure, repurchase or substitution of the allegedly defective WMC mortgages.  US Bank may not recover additional remedies, including monetary damages, from WMC, and US Bank's claim for damages is dismissed.

**CONCLUSION**

Defendants have established that many of Plaintiff's claims fail as a matter of law. Accordingly, **IT IS HEREBY ORDERED that**:

1. EquiFirst's Motion to Dismiss (Docket No. 18) is **GRANTED**;

2. WMC's Motion to Dismiss (Docket No. 21) is **GRANTED in part** and **DENIED in part**; and

3. Plaintiff's First Cause of Action as to EquiFirst and Second and Third Causes of Action as to both Defendants are **DISMISSED**.

Dated: February 16, 2012

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
