IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank National Association, solely in its Capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2006,<br><br>Plaintiff,<br><br>v.<br><br>WMC Mortgage Corporation and EquiFirst Corporation,<br><br>Defendants. | Case No. 11-2542 (PAM/TNL)<br><br><br>**WMC'S ANSWER AND AFFIRMATIVE DEFENSES** |

WMC Mortgage, LLC ("WMC"), as successor to WMC Mortgage Corp. (misnamed in the Complaint as WMC Mortgage Corporation), by and through its attorneys, hereby answers MASTR Asset Backed Securities Trust 2006-HE3's ("Plaintiff") Complaint as follows:

As a preliminary matter, WMC avers that the Court's February 16, 2012 Memorandum and Order issued in connection with WMC's Motion to Dismiss (Dkt. No. 35, the "Order," at 7-8) limited this case to the mortgage loans contained in Plaintiff's "original 200-loan sample" because Plaintiff "has never demanded that WMC or EquiFirst cure any defective loans other than the loans in the first sample." With respect to WMC, the Court's Order thus limits this case to, at most, the 99 loans which

were the subject of Plaintiff's September 30, 2010 letter to WMC (the "99 Mortgage Loans").

## ANSWERS TO NUMBERED PARAGRAPHS

1.      In response to the allegations in Paragraph 1, WMC denies that it "fail[ed]" to act in accordance with any applicable contract or that the 99 Mortgage Loans were "defective" loans.  WMC admits that this is a putative action for breach of contract, that WMC sold the 99 Mortgage Loans to UBS, and that UBS assigned its rights in those loans to the Trust in connection with the securitization of those loans and others through the Trust's issuance of certificates.  Except as expressly admitted herein, WMC denies the remaining allegations contained in Paragraph 1 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

2.      In response to the allegations in Paragraph 2, WMC admits that in the Amended and Restated Master Seller's Purchase and Warranties Agreement (the "Purchase Agreement"), WMC made certain representations and warranties as to individual mortgage loans.  WMC refers to the Purchase Agreement for its true meaning and effect.  WMC denies the remaining allegations in Paragraph 2 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

3.      WMC denies the allegations in Paragraph 3 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

4.     In response to the allegations in Paragraph 4, WMC admits that, as the Court found in its Order (at 3-4, 10), the Purchase Agreement sets forth the sole remedies available to the Trust for a breach of the representations and warranties contained therein. WMC refers to the Purchase Agreement for its true meaning and effect.  WMC denies the remaining allegations in Paragraph 4 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

5.     In response to the allegations in Paragraph 5, WMC admits, upon information and belief, that Exhibit 1 to the Complaint contains a true and correct copy of the PSA.  The remaining allegations in Paragraph 5 are legal conclusions to which no response is required.  To the extent a response is deemed necessary to the remainder of the allegations, WMC admits that the PSA authorizes the Trustee to enforce the rights of the Trust under certain circumstances.  WMC refers to the PSA for its true meaning and effect.  WMC denies the remaining allegations in Paragraph 5 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

6.     WMC admits, upon information and belief, the allegations set forth in Paragraph 6.

7.     WMC denies the allegations set forth in Paragraph 7.  Further answering, WMC states that it is a Delaware LLC, with its principal place of business in Woodland Hills, California.

8.     WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 8.

9.     WMC admits the allegations in Paragraph 9.

10.    WMC admits the allegations in Paragraph 10.

11.    In response to the allegations in Paragraph 11, WMC admits, upon information and belief, that the Mortgage Loans it sold to UBS were securitized, along with other loans, through a series of agreements executed in or about August 2006. WMC further admits that, on or about August 30, 2006, it entered into an Assignment Agreement with UBS and MASTR, pursuant to which, among other things, UBS agreed to convey all right, title and interest in certain mortgage loans to MASTR.  WMC refers to the Assignment Agreement for its true meaning and effect.  WMC also admits that an unexecuted form of the Assignment Agreement is attached as Exhibit D to the PSA. WMC denies the remaining allegations in Paragraph 11 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the first sentence of Paragraph 11 or the allegations directed at EquiFirst.

12.    In response to the allegations in Paragraph 12, WMC admits that it entered into the Purchase Agreement with UBS, pursuant to which, among other things, WMC agreed to sell and UBS agreed to purchase certain mortgage loans, including the Servicing Rights thereon, as defined in the Purchase Agreement.  WMC refers to the Purchase Agreement for its true meaning and effect.  WMC denies the remaining allegations in Paragraph 12 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

13.     In response to the allegations in Paragraph 13, WMC admits that, as the Court found in its Order (at 3-4, 10), the Purchase Agreement sets forth the sole remedies available to the Trust for a breach of the representations and warranties contained therein. WMC refers to the Purchase Agreement for its true meaning and effect.   WMC also admits that Paragraph 13 correctly quotes a portion of the Assignment Agreement.   WMC refers to the Assignment Agreement for its true meaning and effect.   WMC denies the remaining allegations in Paragraph 13 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

14.     In response to the allegations in Paragraph 14, WMC admits that in the Assignment Agreement it represented and warranted, for the benefit of the Assignor, the Assignee and the Trust, that, among other things, certain of the representations and warranties set forth in Sections 3.01 and 3.02 of the Purchase Agreement were true and correct as of the date of the Assignment Agreement.   WMC further admits that in the Assignment Agreement it recognized that MASTR would transfer the Mortgage Loans and assign its rights under the Purchase Agreement to the Trust.   WMC also admits that Paragraph 14 correctly quotes portions of the Assignment Agreement.   WMC refers to the Assignment Agreement for its true meaning and effect.   WMC denies the remaining allegations in Paragraph 14 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

15.     In response to the allegations in Paragraph 15, WMC admits, upon information and belief, that on or about August 1, 2006, MASTR, as Depositor; HomEq,

as Servicer; Wells Fargo Banks, N.A., as Master Servicer, Trust Administrator and Custodian; and US Bank, as Trustee, entered into the PSA. WMC further admits that Paragraph 15 correctly quotes a portion of the PSA. WMC refers to the PSA for its true meaning and effect. WMC denies the remaining allegations in Paragraph 15 to the extent they are directed at WMC. Answering further, WMC states that, as the Court found in its Order (at 3-4), the Purchase Agreement, not the PSA, sets forth the rights and sole remedies available to the Trust for purposes of this action.

16.     WMC admits, upon information and belief, that Paragraph 16 correctly quotes a portion of the PSA. WMC refers to the PSA for its true meaning and effect. WMC denies the remaining allegations in Paragraph 16 to the extent they are directed at WMC. Answering further, WMC states that, as the Court found in its Order (at 3-4), the Purchase Agreement, not the PSA, sets forth the rights and sole remedies available to the Trust for purposes of this action.

17.     WMC admits, upon information and belief, that Paragraph 17 correctly quotes a portion of the PSA. WMC refers to the PSA for its true meaning and effect. WMC denies the remaining allegations in Paragraph 17 to the extent they are directed at WMC. Answering further, WMC states that, as the Court found in its Order (at 3-4), the Purchase Agreement, not the PSA, sets forth the rights and sole remedies available to the Trust for purposes of this action.

18.     The allegations in Paragraph 18 are legal conclusions to which no response is required. To the extent a response is deemed necessary, WMC denies the allegations in Paragraph 18 to the extent they are directed at WMC. Answering further, WMC states

that, as the Court found in its Order (at 3-4), the Purchase Agreement, not the PSA, sets forth the rights and sole remedies available to the Trust for purposes of this action.

19.      In response to the allegations in Paragraph 19, WMC admits that in Section 3.02 of the Purchase Agreement, it made certain representations and warranties as to individual mortgage loans.  WMC refers to the Purchase Agreement for its true meaning and effect.  WMC denies the remaining allegations in Paragraph 19 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

20.      WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 20, and therefore denies them.  Answering further, WMC denies any implication that it committed "material breaches" of any applicable contract.

21.      In response to the allegations in Paragraph 21, WMC admits that it received correspondence from the Trustee dated September 30, 2010 requesting that WMC cure or substitute the 99 Mortgage Loans.  WMC further admits that it received correspondence from the Trustee dated May 27, 2011 requesting that WMC repurchase the 99 Mortgage Loans.  WMC denies that this correspondence constituted adequate notice of a claim, and it also denies that any cure period was triggered with respect to the 99 Mortgage Loans, and it also denies that any such cure period expired on December 17, 2010.  WMC admits that it has not repurchased any of the 99 Mortgage Loans.  WMC lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 21, and therefore denies them.

22.     WMC denies the allegations in Paragraph 22 to the extent they are directed at WMC.  WMC lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

23.     WMC denies the allegations in Paragraph 23 to the extent they are directed at WMC.  WMC lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

24.     Because the Complaint does not identify the specific loan that allegedly is the subject of Paragraph 24, WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 24, and therefore denies them.

25.     Because the Complaint does not identify the specific loan that allegedly is the subject of Paragraph 25, WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 25, and therefore denies them.

26.     Inasmuch as all of the allegations in Paragraph 26 are directed at EquiFirst, WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 26.

27.     Because the Complaint does not identify the specific WMC loans that allegedly are the subject of Paragraph 27, WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 27, and therefore denies them.  WMC also lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

28.     WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 28.

8

29.     WMC lacks knowledge or information sufficient to form a belief as to the allegations set forth in the second sentence of Paragraph 29. WMC denies the remaining allegations in Paragraph 29 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

30.     WMC denies the allegations in Paragraph 30 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

31.     In response to the allegations in Paragraph 31, WMC admits that it has not repurchased any of the 99 Mortgage Loans. WMC denies the remaining allegations in Paragraph 31 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

32.     WMC denies the allegations in Paragraph 32 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst. Answering further, WMC states that it responded in writing as to each of the 99 Mortgage Loans, explaining in detail why each repurchase request was deficient.

33.     WMC denies the allegations in Paragraph 33 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

34.     In response to the allegations in Paragraph 34, WMC restates and incorporates its answers to Paragraphs 1-33 of the Complaint as if fully set forth herein.

35.     In response to the allegations in Paragraph 35, WMC admits that the Purchase Agreement and the Assignment Agreement provide for certain obligations on the part of WMC with respect to the 99 Mortgage Loans.  WMC refers to the Purchase Agreement and the Assignment Agreement for their true meaning and effect.  The allegations of Paragraph 35 that the PSA, the Purchase Agreement and the Assignment Agreement are "valid and enforceable contracts" are legal conclusions to which no response is required.  Answering further, as the Court found in its Order (at 3-4), the Purchase Agreement sets forth the relevant rights and sole remedies at issue in this action.  WMC denies the remaining allegations in Paragraph 35 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

36.     In response to the allegations in Paragraph 36, WMC lacks knowledge or information sufficient to form a belief as to the allegations concerning the notice Wells Fargo purportedly provided to the Trustee on or about August 27, 2010.  WMC admits that it received correspondence from the Trustee dated September 30, 2010 requesting that WMC cure or substitute the 99 Mortgage Loans.  WMC further admits that it received correspondence from the Trustee dated May 27, 2011 requesting that WMC repurchase the 99 Mortgage Loans.  WMC denies that the Trustee notified WMC of any "breaches" of any applicable representations or warranties that materially and adversely affected the value of the Mortgage Loans or the Certificates.  WMC denies the remaining allegations in Paragraph 36 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

37.     In response to the allegations in Paragraph 37, WMC admits that it received correspondence from the Trustee dated September 30, 2010 requesting that WMC cure or substitute the 99 Mortgage Loans.  WMC further admits that over ninety days have passed since it received that correspondence, but denies that such correspondence constituted adequate or prompt notice of any breaches.  WMC further admits that it has not repurchased any of the 99 Mortgage Loans.  To the extent not expressly admitted herein, WMC denies the remaining allegations in Paragraph 37 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

38.     WMC denies the allegations in Paragraph 38 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

39.     In response to the allegations in Paragraph 39, to the extent directed at WMC, WMC states that the Purchase Agreement delineates the sole remedies available if WMC breaches a representation or warranty that materially and adversely affects the value of a loan or the interest of the Trust the related loan, and refers to that Agreement for its true meaning and effect.  Further answering, WMC denies each of the remaining allegations of Paragraph 39 directed to WMC.  WMC lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

40.     WMC denies the allegations in Paragraph 40 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.  Answering further, WMC states that, pursuant to the

Court's Order, Plaintiff's claims in this action are limited to, at most, the 99 Mortgage Loans.

41.     WMC denies the allegations in Paragraph 41 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.

42.     WMC denies the allegations in Paragraph 42 to the extent they are directed at WMC, and lacks knowledge or information sufficient to form a belief as to the allegations directed at EquiFirst.  Answering further, WMC states that, pursuant to the Court's Order, Plaintiff's claims in this action are limited to, at most, the 99 Mortgage Loans.

43.     The Court dismissed Count II of the Complaint and, therefore, no response to Paragraphs 43 through 49 is required.

44.     The Court dismissed Count III of the Complaint and, therefore, no response to Paragraphs 50 through 55 is required.

45.     WMC denies that Plaintiff is entitled to any of the relief requested and, except as expressly admitted or qualified above, denies each and every allegation in the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

WMC states the following affirmative defenses without assuming the burden of proof for such defenses that would otherwise rest with Plaintiff:

46.     Plaintiff's claims are barred because the Complaint fails to state a claim against WMC upon which relief may be granted.

47.     Plaintiff's claims are barred due to its failure to meet the conditions precedent and/or other contractual requirements necessary to trigger WMC's obligation to repurchase any loan, including but not limited to:  (i) Plaintiff failed to provide "prompt written notice" or an opportunity to cure, and (ii) the alleged breaches did not materially and adversely affect the value of the 99 Mortgage Loans or the interest of the Trust therein.  Among other things, the letters the Trustee sent to WMC on September 30, 2010 and May 27, 2011 did not provide prompt written notice to WMC inasmuch as the 99 Mortgage Loans had defaulted at least 17 months earlier, with 95% of them having defaulted more than two years earlier.  In fact, 97 of the 99 Mortgage Loans were liquidated before any notice was sent, and as a consequence, there is no loan remaining as to the liquidated loans that could be repurchased.  In addition, the Trustee failed to provide any explanation concerning why the alleged breaches are material, and did not include any information showing that such breaches had any adverse affect on the value of any or all of the 99 Mortgage Loans or the Trust's interest in any of those loans.

48.     Plaintiff's claims are barred to the extent that WMC has cured the alleged breaches identified by Plaintiff as to any of the 99 Mortgage Loans.

49.     Plaintiff's claims are barred because WMC was not the proximate cause of Plaintiff's alleged loss, inasmuch as any loss in value was not caused by the alleged breaches but instead was due to other factors, including, among other things, the prolonged real estate market crash and significant economic downturn, which included, but was not limited to, borrowers' loss of income or other assets and the precipitous decline in housing values.

50.      Plaintiff's claims are barred to the extent that the 99 Mortgage Loans have been liquidated or are otherwise unavailable to be tendered for repurchase.  Of the 99 Mortgage Loans, Plaintiff had liquidated at least 97 of them before the Trustee had ever requested that such loans be repurchased.  As a consequence, the "sole remedy" of repurchase is not available.

51.      Plaintiff's claims are barred by the doctrines of impossibility, impracticability, and frustration of purpose.

52.      Plaintiff's claims are barred by Plaintiff's own material breach of contract.

53.      Plaintiff's claims are barred because they are not ripe.

54.      Plaintiff's claims are barred because Plaintiff has failed to mitigate, minimize, or avoid damages.

55.      Plaintiff's claims are barred by the doctrine of waiver.

56.      Plaintiff's claims are barred by the doctrine of laches.

57.      Plaintiff's claims are barred by the doctrine of estoppel.

58.      Plaintiff's claims are barred by the doctrine of acquiescence.

59.      Plaintiff's claims are barred by the doctrine of champertry.

60.      Plaintiff's claims are barred by Plaintiff's breach of the implied covenant of good faith and fair dealing.

61.      Because the Complaint does not plead sufficient facts to enable WMC to determine all of its applicable defenses, WMC reserves the right to assert any additional defenses once the precise nature of the claims can be ascertained through discovery or otherwise.

WHEREFORE, WMC respectfully prays for the Court to enter judgment in its favor against Plaintiff, for the costs of this action, and for all other relief deemed just and proper.

Dated:  March 15, 2012                 **GREENE ESPEL P.L.L.P.**

                                    _s/ Jenny Gassman-Pines_____

Andrew M. Luger, Reg. No. 189261
Jenny Gassman-Pines, Reg. No. 386511
200 S. Sixth Street, Suite 1200
Minneapolis, MN  55402
aluger@greeneespel.com
jgassman-pines@greeneespel.com
(612) 373-0830

and

**JENNER & BLOCK L.L.P.**

Barbara S. Steiner, IL Reg. No. 2719665
(*pro hac vice*)
Matthew J. Thomas, IL Reg. No. 6244009
(*pro hac vice*)
353 N. Clark Street
Chicago, IL  60654
bsteiner @jenner.com
mthomas@jenner.com
(312) 222-9350

Attorneys for WMC Mortgage, LLC, as successor to Defendant WMC Mortgage Corporation