GIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank National Association, solely in its Capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2006, | Case No. 11-2542 (PAM/TNL) |
| Plaintiff, | **DECLARATION OF ROSIE NGUYENCUU** |
| v. | |
| WMC Mortgage Corporation , | |
| Defendant. | |

I, Rosie Nguyencuu, declare as follows:

1.     I am the Repurchase Leader at WMC Mortgage, LLC ("WMC").   At WMC, my responsibilities include overseeing those employees responsible for processing repurchase requests for mortgage loans.   In performing those responsibilities, I have access to and regularly review loan files and other records relating to mortgage loans.

2.     I either have personal knowledge of the matters set forth in this Declaration, or have determined that the facts contained in this Declaration are true and correct to the best of my knowledge and belief based on information obtained from my review of business records of WMC; documents provided to WMC either directly or indirectly by U.S. Bank National Association, as trustee for the MASTR Asset Backed Securities Trust 2006-HE3 ("U.S. Bank" and "the Trust," respectively); or documents

1

that are publicly available (such as from the applicable County Recorder of Deeds or websites reflecting such records). If called as a witness, I could and would testify competently as to the matters set forth in this Declaration.

**The 80 Loans**

3.      I am familiar with the September 30, 2010 letter from U.S. Bank to WMC (the "Letter"), attached hereto as Exhibit 1. WMC's records reflect that WMC received the Letter on October 15, 2010.

4.      Schedule I of the Letter  identified 99 loans sold by WMC in May 2006, along with other loans, to UBS Real Estate Securities, Inc. ("UBS") pursuant to an Amended and Restated Master Seller's Purchase and Warranties Agreement ("Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached as Exhibit 2.

5.      Among the loans identified in the Letter are the 80 loans (the "Loans") that are the subject of WMC's Motion for Partial Summary Judgment. The 80 Loans are identified on the chart attached as Exhibit 3 (the "Loan Chart"). The Letter was the first time Plaintiff – or anyone else – notified WMC that any of the 80 Loans was allegedly defective, asked that the alleged defects be cured, or requested that any of the Loans be substituted or repurchased.

**Information Regarding the Performance of the Loans**

6.      According to the cover letter sent by U.S. Bank's agent, WMC obtained the Payment History Reports for each of the Loans on October 21, 2010, which I have personally reviewed. To the best of my understanding and belief, these reports were

created and maintained by the Servicer for the Trust, Homeq Servicing Corporation ("Homeq").

7.    The Payment History Reports reflect that each Loan went into default before September 30, 2010, and any credits or debits to the loan balances, including any liquidation proceeds credited to the loan balances after a short sale or foreclosure. The Payment History Reports also show a "Foreclosure Principal Removal" credit for all 80 Loans equal to the then-outstanding balance for each Loan. These Reports further state the "Principal Balance" for each Loan, which in each instance is "0.00" for all 80 Loans.

8.    I also reviewed the Trust's monthly Distribution Reports, which to the best of my understanding and belief were generated by the Trust's Master Servicer, Wells Fargo Bank, N.A. ("Wells Fargo"), and then distributed to Certificateholders on a monthly basis. The Distribution Reports are available on the following website upon request: http://www.ctslink.com/.

9.    Among other things, the Distribution Reports show that after the Trust credited each Loan with a "Foreclosure Principal Removal" and reduced the "Principal Balance" for each Loan to zero, the Trust recorded a "Realized Loss" for each Loan in an amount equal to the Foreclosure Principal Removal credit after accounting for any post-foreclosure adjustments.

10.    Additionally, the Distribution Reports issued November 2008 or later show the Trust's reported "Liquidation Effective Date" for 55 of the Loans. The Distribution Reports for the period prior to November 2008 do not include the Liquidation Effective

Date for any Loan, but they do reflect the Cumulative Realized Loss for the other 25 Loans.

11.     I also reviewed the publicly available documents filed with the applicable County Recorder of Deeds, including but not limited to Trustee's Deeds, Trustee's Deeds Upon Sale, and Grant Deeds, to determine whether the properties which served as the collateral for the Loans were sold, and if so, whether they were sold to third parties, and when they first were sold post-default. I obtained Deeds filed with the applicable County Recorder of Deeds for 75 of the Loans.

12.     I was unable to access the original public filings from the applicable County Recorder of Deeds for 5 of the 80 Loans. For those Loans, I retrieved the relevant sales data for those properties from the electronic database known as SiteXdata.com ("SiteX"), a public website that summarizes records filed with the applicable County Recorders of Deeds.

13.     Using the Payment History Reports and Distribution Reports created by the Trust's Servicer and Master Servicer, and the records of the County Recorders of Deeds and the SiteX reports, I helped create the Loan Chart attached as Exhibit 3.

14.     Attached as Group Exhibit 4 hereto are true and correct copies of the Payment History Reports, relevant excerpts of the Distribution Reports, the Trustee's Deeds, Trustee's Deeds Upon Sale, and Grant Deeds from the applicable County Recorder of Deeds, and the SiteX reports that served as the sources of information for the Loan Chart. The relevant data upon which I relied from the Distribution Reports and

Payment History Reports is highlighted in yellow. The documents are organized by borrower name, and indicate the last four digits of the loan number for each Loan.

15.     The first two columns of the Loan Chart list the borrower name and the last four digits of the WMC loan number for each Loan. This information was derived from Schedule I of U.S. Bank's Letter.

16.     The third column of the Loan Chart lists the default date for each Loan. This information was derived from the Payment History Reports for each Loan.

17.     The fourth column of the Loan Chart lists the liquidation date for each Loan. This information was derived from the monthly Distribution Reports and/or the Payment History Reports. Where the Distribution Report listed a "Liquidated Effective Date," I used that date as the date of liquidation. I used that as the liquidation date for 55 of the 80 Loans.

18.     Because the Distribution Reports dated prior to November 2008 did not include a "Liquidated Effective Date" column, I determined the liquidation date for the other 25 Loans by referencing the date on which the Trust credited the applicable Loan with a "Foreclosure Principal Removal" credit equal to the outstanding balance of the Loan. This information was derived from the Payment History Reports.

19.     The fifth column of the Loan Chart lists the date upon which the property securing a given Loan was first sold post-default. This information was derived from the Trustee's Deeds, Trustee's Deeds Upon Sale, or Grant Deeds available from the relevant County Recorder of Deeds for the 75 Loans for which those deeds were available, and from the SiteX report for the remaining 5 Loans.

20.     The sixth column of the Loan Chart lists the Principal Balance of each Loan as of September 30, 2010 (the date of U.S. Bank's Letter), which was $0.00 for each of the Loans.  This information was derived from the Payment History Reports.

21.     Based on my review of the Trustee's Deeds, Trustee's Deeds Upon Sale, and Grant Deeds from the applicable County Recorder of Deeds and the SiteX records, the properties serving as collateral for 79 of the 80 Loans were sold prior to September 30, 2010.

22.     The property securing the one other Loan was purchased by U.S. Bank on December 30, 2010, at auction.  As of April 18, 2012, U.S. Bank sold the property to a third party.  However, the Master Servicer's monthly distribution report for November 2008 reflects a "Liquidated Effective Date" for this Loan of August 13, 2008, when the unpaid principal balance of the Loan was reduced to $0.00.


I declare under penalty of perjury that the foregoing is true and correct.


Executed On:   May 31, 2012

By:   _Rosie Nguyencuu_
        Rosie Nguyencuu