UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MASTR Asset Backed Securities Trust 2006-HE3, by U.S. BANK NATIONAL ASSOCIATION, *solely in its Capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2006*,<br><br>Plaintiff,<br><br>v.<br><br>WMC Mortgage Corporation,<br><br>Defendant. | Civil No. 11-2542 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Michael M. Fay, Jenny Kim, Uri A. Itkin, and Marc E. Kasowitz, **KASOWITZ BENSON TORRES & FRIEDMAN LLP**, 1633 Broadway, New York, NY 10019; Justin H. Perl, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for plaintiff.

Barbara S. Steiner, Matthew J. Thomas, and Megan B. Poetzel, **JENNER & BLOCK**, 353 N. Clark Street, Chicago, IL 60654; Andrew M. Luger and Jenny Gassman-Pines, **GREEN ESPEL PLLP**, 222 South 9th Street, Suite 2200, Minneapolis, MN 55402, for defendant.

In this action plaintiff MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank National Association as trustee ("the Trustee") seeks to compel defendant WMC Mortgage Corporation ("WMC") to repurchase allegedly defective "Mortgage Loans," pursuant to a provision of the governing contract between the parties. Before the Trustee demanded repurchase, however, it foreclosed on the property securing the mortgage notes and charged off the remaining principal balances. WMC moves for partial summary

judgment with respect to 80 of the loans at issue in this action on the grounds that, (1) following foreclosure, the mortgage loans no longer exist to be repurchased, and (2) the repurchase remedy is unavailable because the Trust failed to discharge the condition precedent of giving "prompt notice" of the event triggering the repurchase requirement. The Court finds the Trustee's reading of the "Mortgage Loan" definition to be circular and at odds with other provisions of the agreement, persuasive authority, and common sense. The 80 mortgage loans at issue no longer exist to be repurchased, and WMC's motion will be granted.

## BACKGROUND

This case involves a mortgage-backed securities trust. The Trustee is U.S. Bank National Association, and the "Master Servicer" of the Trust is Wells Fargo Bank, N.A. Defendant WMC Mortgage Corporation, a subsidiary of GE Capital, is a "mortgage originator" that sold mortgages to the Trust; the public prospectus for the Trust stated that WMC originated approximately 58% of the loans in the Trust. The Trust then issued certificates backed by the Trust's assets.

WMC made certain representations and warranties (R&W) about the mortgage loans it originated, and the Trust was to provide "prompt notice" upon discovering breach of any R&W. (Decl. of Rosie Nguyencuu, Ex. 2 ("Purchase Agreement"), § 3.02, May 31, 2012, Docket No. 54; Compl. ¶¶ 2-3, Sept. 2, 2011, Docket No. 1.) The Purchase Agreement provides that WMC must either cure or repurchase defective loans within 60 days of being notified of the breach. (Purchase Agreement, § 3.03.) Moreover, "the obligations [of WMC] . . . to cure, substitute or repurchase a defective Mortgage

Loan . . . constitute the sole remedies of [the Trustee] respecting a breach of the [R&Ws]." (*Id.*) In other words, the Trustee is limited to its claim for specific performance of the repurchase remedy. (Mem. & Order at 10, Feb. 16, 2012, Docket No. 35.)

In this action the Trustee contends that the mortgages WMC originated violated the R&Ws, and the Trustee seeks to compel WMC to repurchase the allegedly defective loans.[1] (Compl. ¶¶ 38-42.) By letter dated September 30, 2010, the Trustee notified WMC of an alleged breach of WMC's R&Ws, and requested that WMC cure, substitute, or repurchase the loans within 60 days. (Ngyuencuu Decl., Ex. 1.) September 30 was the first time the Trust notified WMC that the Mortgage Loans were defective. (*Id.* ¶ 5.)

## I.     Relevant Provisions of the Purchase Agreement

While three contracts are at issue, the Court has determined that the Purchase Agreement between UBS and WMC governs the parties' rights and obligations in this case. (Mem. & Order at 4.) The parties dispute the meaning of various provisions of the Purchase Agreement, and these provisions are central to resolving this motion. Accordingly, they are set forth below. As to an R&W breach and the repurchase remedy:

> It is understood and agreed that the representations and warranties . . . shall survive the sale of the Mortgage Loans and delivery of the Mortgage Files

---

[1] The loans at issue here were among those that WMC sold to UBS Real Estate Securities, Inc. ("UBS") in 2006. (WMC also transferred to UBS the servicing rights to each of the loans.) UBS then transferred its interest in the loans to Mortgage Asset Securitization Transactions, Inc. ("MASTR") pursuant to an assignment agreement, and MASTR (along with various other entities), entered into a Pooling Services Agreement ("PSA"), which created the Trust and provided for the securitization of the Mortgage Loans. (*See* Compl. ¶¶ 1, 11-15.)

to the Purchaser, or its designee, and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File.  **Upon discovery by either the Company or the Purchaser of a breach of any of the foregoing representations and warranties** which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser . . . **the party discovering such breach shall give prompt written notice** to the other parties.

Within 60 days of the earlier of either discovery by or notice to the Company of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, the Company shall use its commercially reasonable efforts promptly to cure such breach in all material respects and, **if such breach cannot be cured, the Company shall, at the Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price.**  In the event that a breach shall involve any representation or warranty set forth in Section 3.01 (which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans) and such breach cannot be cured within 60 days of the earlier of either discovery by or notice to the Company of such breach, all of the affected Mortgage Loans shall, at the Purchaser's option, be repurchased by the Company at the Repurchase Price. . . .

At the time of repurchase of any deficient Mortgage Loan, the Purchaser and the Company shall arrange for the reassignment of the repurchased Mortgage Loan to the Company and the delivery to the Company of any documents held by the Custodian relating to the repurchased Loan.

(Purchase Agreement, § 3.03 (emphasis added).)

The Purchase Agreement defines "Mortgage Loan" as follows:

Mortgage Loan: An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the related Mortgage Loan Schedule, which Mortgage Loan **includes without limitation** the Mortgage File, the servicing file, the Monthly Payments, Principal Prepayments, **Liquidation Proceeds**,[2] Condemnation Proceeds, Insurance Proceeds, REO Disposition

---

[2] "Liquidation Proceeds" are defined as: "**Amounts received in connection with the partial or complete liquidation of a defaulted Mortgage Loan**, whether through the sale or

(Footnote continued on next page.)

- 4 -

Proceeds, any escrow accounts related to the Mortgage Loan, **the Servicing Rights and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan**, excluding replaced or repurchased mortgage loans.

(*Id.* § 1.01 (emphasis added).)

"Stated Principal Balance," is defined as "the principal balance of [each] Mortgage Loan as of any date of determination after giving effect to payments of principal on or before such date." (*Id.*) Finally, the Purchase Agreement defines "Repurchase Price" as:

With respect to any Mortgage Loan, a price equal to (i) the product of the percentage of par stated in the related Confirmation and the Stated Principal Balance of the Mortgage Loan **as of the date of such repurchase**, plus (ii) interest on such outstanding principal balance at the related Mortgage Interest Rate from the last date through which interest was paid and distributed to the Purchaser to the last day of the month in which such repurchase occurs, plus, (iii) reasonable and customary third party expenses incurred in connection with the transfer of the Mortgage Loan being repurchased.

(*Id.* (emphasis added).)

## II. "Liquidation"[3] of the Loans

The properties serving as collateral for 79 of the 80 loans were sold prior to the September 30, 2010 letter. (Nguyencuu Decl. ¶ 21, Ex. 3.) The property securing the

---

(Footnote continued.)

assignment of such Mortgage Loan or the related Mortgaged Property, trustee's sale, **foreclosure sale or otherwise**." (*Id.*) (emphasis added).

[3] The parties dispute the meaning of the term "liquidation" under the governing Purchase Agreement, in which it does not appear as a defined term. WMC turns to an attachment to the PSA – the "Form of Realized Loss Report," seemingly an accounting form – which identifies four "Liquidation Types": REO sale, third-party sale, short sale, and charge-off. (PSA, Ex. R-3 at 419-21, Docket No. 1-1.) The Trustee, by contrast, relies on the Purchase Agreement's definition of Liquidation Proceeds, defined above.

remaining loan was purchased at auction on December 30, 2010, and later sold to a third party. (*Id.* ¶ 22.) Each borrower had defaulted before September 30, 2011. (*Id.* ¶ 7.) The Trust had also "charged off" any remaining balance on the loans, reducing the "Principal Balance" of all loans to $0 before September 30, 2010.

### III. Record Evidence on WMC's Pre-Discovery Motion for Partial Summary Judgment

No discovery has yet taken place. In support of its motion for partial summary judgment, WMC submits the Trust's publicly available records, as well as other documents that the Trust had previously provided to WMC. It is undisputed that this evidence shows, with respect to the 80 loans that are the subject of this motion, that every borrower had defaulted; that the properties serving as collateral for 79 of the 80 loans at issue were foreclosed upon and sold prior to September 30, 2010; and that the property securing the remaining loan was purchased on December 30, 2010, and later sold to a third party (though the servicer's records reflect a "liquidated effective date" of August 13, 2008 for this loan, when the unpaid principal balance was reduced to $0). (Nguyencuu Decl. ¶¶ 20-22.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   WMC's MOTION FOR PARTIAL SUMMARY JUDGMENT

WMC moves for summary judgment with respect to 80 of the 99 mortgage loans at issue in the lawsuit. The dispute boils down to whether foreclosure on the properties securing the mortgage loans extinguishes the loans, and renders them unavailable for repurchase. WMC argues that it does. The Trustee argues that the Purchase Agreement's reference to foreclosure proceeds in the definition of "Mortgage Loan" shows that the loans survive, and are available for WMC to repurchase.[4] Because the Court finds that the loans are not available for repurchase, it will grant WMC's motion.

---

[4] WMC offers two potential bases for summary judgment: (1) the only remaining remedy of specific performance of the repurchase remedy is not available because the Mortgage Loans no longer exist following foreclosure and sale of the mortgaged properties, and (2) even if the Mortgage Loans remain to be purchased, the repurchase remedy is not available because the Trust breached a condition precedent by failing to provide "prompt notice" of WMC's alleged breach of the R&Ws.

The Court will address both arguments for the benefit of the parties, though it roots its conclusion solely in the former. Summary judgment is premature with respect to the notice issue because no discovery has taken place, and it is possible that discovery may reveal pertinent information about precisely what and when the Trustee knew about the breaches. *See, e.g.*, *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) ("As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" (quoting *In re TMJ Implants Prods. Liability Litigation*, 113 F.3d 1484, 1490 (8th Cir. 1997))); *Cool-Pak, LLC v. Larsen*, No. 11-2182, 2012 WL 1933706, at *2 (D. Minn. May 29, 2012) (denying pre-discovery summary judgment motion as premature).

A.  **Availability of the 80 Mortgage Loans for Repurchase**

To prevail on a specific performance claim, the Trust must show that it has substantially performed its contractual obligations, and is "ready, willing and able to fulfill [its] remaining obligations." *Alba v. Kaufmann*, 27 A.D.3d 816, 818 (N.Y. App. Div. 2006).[5] WMC's argument is that the Trust cannot tender the now-extinguished Mortgage Loans and "arrange for the reassignment of the repurchased Mortgage Loan to [WMC]," as the Purchase Agreement requires, because it no longer holds title to the properties securing the loans and had charged off the remaining unpaid principal balances of the loans well before it asked WMC to repurchase them. Indeed, WMC argues that the Trustee has pled itself out of court in the wake of the Court's February 16, 2012 Order, which limited relief to specific performance of the repurchase remedy, because the Trustee admitted that specific performance is "not available . . . where a loan has been liquidated and is no longer available for repurchase." (Compl. ¶ 55 (alleging that WMC sought money damages "if specific performance is for any reason not available (for example, where a loan has been liquidated and is no longer available for repurchase)").[6]

---

[5] New York law governs the agreement. (Purchase Agreement, § 9.04.)

[6] As for this alleged admission, the Trustee emphasizes the "and" in "has been liquidated **and** is no longer available for repurchase," and argues that while the loans were liquidated, they are not "not available for repurchase" given that the definition of Mortgage Loan includes proceeds stemming from a foreclosure sale.

The Court need not and does not rely on WMC's alleged admission in concluding that the loans are no longer available. The language of the agreement is sufficient to conclude that the loans are no longer available for repurchase. The Court notes, however, that it finds the Trustee's reading of its complaint to be decidedly unpersuasive: the Trustee offers no meaningful

(Footnote continued on next page.)

The Trustee hangs its hat, as it must, on the Purchase Agreement's definition of "Mortgage Loan." The Court must decide whether, notwithstanding the Trustee's foreclosure on the collateral securing the loans, the loans remain available for repurchase because the Purchase Agreement defines "Mortgage Loan" to include proceeds from any foreclosure sale – ostensibly demonstrating that the parties' contemplated repurchase following foreclosure. For each of the 80 Mortgage Loans at issue here, the Trustee avers that it owns and can convey to WMC the Mortgage File – including the Mortgage Note, the servicing file, any escrow accounts related to the Mortgage Loan, the Servicing Rights, and "all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan" – and that it can arrange for the "reassignment of the repurchased Mortgage Loan" to WMC, just as the Purchase Agreement requires. (Trustee's Mem. in Opp'n to WMC's Mot. for Summ. J., at 12 June 21, 2012, Docket No. 65.)

As a general proposition, a "mortgage loan" is a "loan secured by a mortgage or deed of trust on real property." Black's Law Dictionary (9th ed. 2009). And under the law of many states, including New York, a foreclosure decree operates to merge the interests of mortgagor and mortgagee, and vest in the purchaser the entire interest and estate as it existed at the date of the mortgage. *See Christ Protestant Episcopal Church v. Mack*, 93 N.Y. 488, 492 (N.Y. 1883); *see also First Place Bank v. Skyline Funding, Inc.*,

(Footnote continued.)

way to distinguish between loans that are "liquidated" and loans that are "liquidated and . . . no longer available for repurchase."

10 CV 2044, 2011 WL 3273071, at *4 (N.D. Ill. July 27, 2011) (observing that under Illinois law "a default order or foreclosure decree merges the real estate mortgage and the mortgage indebtedness into a judgment" leaving no mortgage loan to be repurchased).

The central question for the Court, then, is whether the term "Mortgage Loan," as defined in the Purchase Agreement, operates to preserve the mortgage loans for repurchase.[7] The guiding light in construing and interpreting a contract is the intent of the parties. *SR Intern. Bus. Ins. Co. v. World Trade Center Properties, LLC,* 467 F.3d 107, 125 (2d Cir. 2006). In ascertaining the parties' intent, "lest form swallow substance, [the] goal must be to accord the words of the contract their fair and reasonable meaning." *Sutton v. E. River Sav. Bank*, 55 N.Y.2d 550, 555 (N.Y. 1982) (citation omitted). The Court finds that reading the "Mortgage Loan" definition to contemplate repurchase following foreclosure and sale of the collateral securing the loans would elevate form over substance, sit uneasily with other provisions of the Purchase Agreement, and be contrary to both the apparent intent of the parties and common sense.

---

[7] The Court finds the dispute about the import of antideficiency legislation enacted in the various states in which the foreclosed upon collateral is located to be something of a distraction. Antideficiency statutes prohibit or limit the mortgagee's ability to obtain a deficiency judgment should the foreclosure proceeds not satisfy the underlying debt. *See* Lawrence R. Ahnern, 1 Law of Debtors and Creditors § 8:20 (2012). Neither party wants to be holding these loans when the music stops. But determining whether the Trustee – or WMC, if compelled to repurchase the loans – can pursue a deficiency judgment does not resolve the dispositive question of whether the parties contracted to preserve the mortgage loans for repurchase following foreclosure on the collateral securing them.

### 1. Language of the Repurchase Agreement

The Trustee's reading of the "Mortgage Loan" definition is superficially appealing. "Mortgage Loan" is defined to include "Liquidation Proceeds," which in turn is defined to include "amounts received in connection with the partial or complete liquidation of a defaulted Mortgage Loan, whether through . . . foreclosure sale or otherwise." (Purchase Agreement § 1.01.) It might thus appear that the parties contemplated repurchase of "Mortgage Loans" following foreclosure. But it does not follow that because parts of the "Mortgage Loan" are available for repurchase, the Mortgage Loan itself remains to be purchased. Careful review of the definition is helpful:

> [A] Mortgage Loan **includes without limitation** the Mortgage File, the servicing file, the Monthly Payments, Principal Prepayments, **Liquidation Proceeds**,[8] Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, any escrow accounts related to the Mortgage Loan, **the Servicing Rights and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan**, excluding replaced or repurchased mortgage loans.

(Purchase Agreement, § 1.01 (emphasis added).) The Mortgage Loan "includes" liquidation proceeds – along with the mortgage file, servicing file, servicing rights, insurance proceeds, etc. The purpose of this list is plainly to ensure that when an actual mortgage loan is transferred, all attendant "rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan" go along with it. This language

---

[8] Liquidation Proceeds are defined as: "**Amounts received in connection with the partial or complete liquidation of a defaulted Mortgage Loan**, whether through the sale or assignment of such Mortgage Loan or the related Mortgaged Property, trustee's sale, **foreclosure sale or otherwise**." (*Id.* (emphasis added).)

prevents the transferor from arguing that it has retained some rights, benefits, or proceeds from the transferred mortgage. It would be a tortured reading of the provision, however, to equate the loan's constituent parts with the loan itself, and hold that merely because the Trustee can produce certain **parts** of the "Mortgage Loan" – the Mortgage File, foreclosure proceeds, etc. – the Mortgage Loan as a **whole** remains to be repurchased.

Other provisions of the Purchase Agreement also support this conclusion. For example, the repurchase provision requires "reassignment of the repurchased Mortgage Loan to [WMC] **and** the delivery to [WMC] of any documents held by the Custodian relating to the repurchased Loan." (Purchase Agreement § 3.03 (emphasis added).) Because the Trustee no longer holds title to the collateral securing the loans, however, there is nothing left to "reassign" but documents, and the Purchase Agreement separately requires such documents to be "deliver[ed] to [WMC]." This provision makes no sense under the Trustee's preferred reading. Similarly, as part of the reassignment, WMC must be legally recognized as the beneficial holder of the loan either through assignment "in recordable form" or designated in the "MERS" electronic mortgage registry. (*Id.*) This requirement is also nonsensical if the parties thought a "mortgage loan" could exist independently of the underlying collateral. In short, on the Trustee's interpretation, WMC must in effect pay the Trustee simply for "reassigning" paper files – which are

themselves separately referenced in the Agreement. The Court is not persuaded that the parties intended such a bizarre result.[9]

Though the Court's decision is rooted in the language of the Purchase Agreement, it is useful to recall that as a practical matter a "mortgage loan" is a loan secured by a mortgage or deed on real property. Black's Law Dictionary (9th ed. 2009). The foregoing interpretation of the Purchase Agreement is in line with this definition, and absent a strong textual indication to the contrary the Court will not elevate form over substance to hold that a mortgage loan exists independently of the mortgage or deed of trust which secures it. In sum, the Court finds that under the governing agreement, WMC cannot be compelled to repurchase "Mortgage Loans" from the Trust where the Trust no longer holds title to the real property securing those loans. *See also First Place Bank v. Skyline Funding, Inc.*, 10 CV 2044, 2011 WL 3273071, at *4 (N.D. Ill. July 27, 2011) (rejecting as "nonsensical" plaintiff bank's allegation that foreclosure did not alter its obligation to repurchase a mortgage loan because under Illinois law "a default order or foreclosure decree merges the real estate mortgage and the mortgage indebtedness into a

---

[9] The Trustee also claims to have calculated a positive Stated Principal Balance for 38 of the Mortgage Loans at issue, which – with interest and the Trustee's cost of enforcement – is what the Trustee claims to constitute WMC's "Repurchase Price." (*See* Decl. of Clara Helena Taborda, June 21, 2012, Docket No. 66.) The Trustee, however, does not hew to the Purchase Agreement's definition of "Repurchase Price," which WMC persuasively demonstrates would amount to $0 for each loan. (WMC's Reply Br. in Supp. of Mot. for Partial Summ. J. at 9-13, June 28, 2012, Docket No. 66.) For example, Taborda calculates the repurchase price based on the Stated Principal Balance as of the date of foreclosure, rather than the date of repurchase, as the "Repurchase Price" definition requires. (*See* Purchase Agreement § 1.01.) The Court thus finds Taborda's calculations to be irrelevant. And that the repurchase price of the 80 loans, calculated per the terms of the Purchase Agreement, would amount to $0 per loan were the Trustee able to compel repurchase further shows that the parties did not contemplate the repurchase remedy as being applicable in the present circumstance.

judgment"). Accordingly, the Court will grant WMC's motion for partial summary judgment on the ground that, with respect to these 80 loans, the only remaining remedy – specific performance – is not available to it.[10]

### B. "Prompt Notice" of the Breach

WMC also argues that summary judgment is warranted because the Trustee failed to satisfy the condition precedent of the repurchase remedy that it provide "prompt written notice" to WMC of a breach of its R&Ws. Under New York law, the question of whether notice was prompt – that is, given within a reasonable time – can be determined as a matter of law. *See Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortgage Acceptance Co.*, No. 00 Civ. 8613, 2002 WL 818082, at *5, 11-12 (S.D.N.Y. Apr. 30, 2002). The Purchase Agreement provides that the Trustee must provide prompt notice of the breach upon "discovering" it. (Purchase Agreement § 3.03.) "A party 'discovers' a breach when it knows or should know that the breach has occurred." *Morgan Guar. Trust Co.*, 2002 WL 818082, at *5. Learning of facts merely suggestive of a breach would not require the Trustee to immediately raise a claim. *See id.* Rather, "upon receipt of such notice, it becomes incumbent upon the buyer to pick up the scent and nose to the

---

[10] WMC also argues that the doctrines of impossibility, impracticability, and frustration bar the Trustee's specific performance claim because the loans are not available for repurchase. The applicability of these doctrines is derivative of the Court's interpretation of the Purchase Agreement; in other words, it is only impossible or impracticable for WMC to repurchase the loans if the loans are, as a matter of law, extinguished or otherwise unavailable. Courts, moreover, apply these doctrines sparingly. *See, e.g.*, *Kel Kim Corp. v. Central Mkts.*, 70 N.Y.2d 900, 902 (N.Y. 1987) ("While [impossibility] defenses have been recognized in the common law, they have been applied narrowly."). Accordingly, the Court finds it unnecessary to address these theories.

source. If the quest confirms this suspicion, *then* he must make [the] decision [to raise the claim] with reasonable dispatch." *Id.* (internal quotation marks and citations omitted) (alterations in original).

It is not disputed that the Trustee provided written notice on September 30, 2010, after the property securing the loans had been foreclosed upon and the remaining principal balances charged off. The Court is persuaded, in light of the purpose of the repurchase remedy, that providing notice of an alleged R&W breach only after foreclosing on the property securing the loan cannot constitute "prompt notice" under any reasonable understanding of that term because such notice functionally deprived WMC of a meaningful opportunity to attempt to cure the alleged breaches or mitigate its losses in any way.

It is true that WMC offers no reason to disbelieve the Trustee's contention that discovering R&W breaches requires a thorough review of the Mortgage Files, and no evidence in the record shows that anyone was **actually** aware of the R&W breaches when the 80 Mortgage Loans went into default.[11] Yet for two reasons the Court finds that the Trustee was chargeable with knowledge of WMC's R&W breaches no later than when it elected to foreclose on the property securing a loan. First, the Trustee had complete access to the Mortgage Files since acquiring the loans in 2006. Second, the Trustee

---

[11] As the Trustee argues, a borrower's default may be caused by any number of factors, and nothing in the Purchase Agreement imposes on the Trustee an obligation to investigate to determine whether default was caused by a breach of WMC's R&Ws. But notice of default may be enough to put a party on notice that such a breach may have occurred so as to trigger a duty to investigate.

alleged that it liquidated nearly half of the Trust's original loan balance "because of the pervasive fraud and misrepresentations in the loan applications." (Compl. ¶ 28.) Upon learning of the borrowers default, the Trustee was duty-bound to investigate its suspicions. *See Morgan Guaranty Trust Co.*, 2002 WL 818082, at *5. Accordingly, the Trustee was constructively aware of the breaches before it received the August 2010 report that provided the basis for its actual knowledge.[12]

More fundamentally, however, the undisputed purpose of the "prompt notice" requirement is to allow WMC the opportunity to attempt to cure the breach within the 60-day cure period or, if it cannot cure, to take whatever meaningful action it chooses to take in order to protect its interest in the repurchased loan. But here, notice of the breach came **after** each loan was liquidated. Providing WMC notice of the R&W breach only after the Trust elected to foreclose eviscerates WMC's mitigation opportunities. In light of the purpose of the repurchase remedy, the Court fails to see how notice following foreclosure can be "prompt."

While the Court finds that notice was not "prompt" under the circumstances, it will not grant summary judgment on this basis prior to discovery. It is possible that discovery would unearth further information as to precisely what the Trustee knew about the breaches and when, and depriving the Trustee of the opportunity to discover such information would be inappropriate. *See Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) ("As a general rule, summary judgment is proper 'only after

---

[12] In any case, to the extent that the servicer knew of these breaches before August 2010, that knowledge is imputed to the Trustee. *See Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829 (N.Y. 1985).

the nonmovant has had adequate time for discovery.'" (quoting *In re TMJ Implants Prods. Liability Litigation*, 113 F.3d 1484, 1490 (8th Cir. 1997))); *Cool-Pak, LLC v. Larsen*, No. 11-2182, 2012 WL 1933706, at *2 (D. Minn. May 29, 2012) (denying summary judgment motion as premature).  Nevertheless, because summary judgment is independently warranted for the reasons discussed above, WMC's motion will be granted.

## ORDER

Based on the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant WMC Mortgage Corporation's Amended Motion for Partial Summary Judgment [Docket No. 51] is **GRANTED**.

DATED: October 1, 2012  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge